E-FILED
Tuesday, 17 November, 2020  02:12:17 PM
Clerk, U.S. District Court, ILCD

In The United States District Court
For The Central District Of Illinois

Michael Stone
    Plaintiff, R-18027

vs.

Brad Johnson, % Fyffe,
Lt. Walters and Justin
Hammers

Case No.

Jury Trial Demanded

## Complaint

## I
### Introduction

1.) This is a 42 U.S.C §1483 and Civil Conspiracy claim action filed by Plaintiff Michael Stone, a state prisoner at Illinois River C.C. P.O. Box 999, Canton IL 61520; making the following claims and violations against defendants Brad Johnson, % Fyffe, Lt. Walters and Justin Hammers:

    1.) Retaliation and Conspiracy
    2.) Interference With Access To The Courts
    3.) Negligence
    4.) Intentional Infliction of Emotional Distress and seeks money damages, Injunctive relief and Declaratory Judgment.

## II
### Jurisdiction

2.) A Civil Conspiracy claim may be cognizable under §1483. See Lewis v. Washington, 300 F.3d 829, 831 (7th Cir. 2002) and pursuant to 775 ILCS 5/6-101.

3.) Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §1331 in that this is a civil action arising under the Constitution of the United states. This court also has authority to excercise jurisdiction over all relevant stat-law claims pursuant to 28 U.S.C. §1367(a)

4.) Jurisdiction of the Court is invoked pursuant to 28 U.S.C. §1343(a)(3) in that this action seek to redress the deprivation, under color of state law, of rights secured by Acts of Congress providing for equal rights of person within the jurisdiction of the U.S.

# III
# Parties

5.) Plaintiff Michael Stone at all times relevant was confined by the Illinois Department of Correction (IDOC) at Illinois River Correctional Center.

6.) Brad Johnson is, and on information and belief at all relevant times herein mentioned was Internal Affairs (IA) at Illinois River C.C. As to all claims presented herein against him, defendant Johnson is being sued in his individual capacity for damages. At all relevant times defendant Johnson has acted under color of state law.

7.) C/O Fyffe, defendant; is and on information and belief at all relevant times herein mentioned was a correctional officer and the serving C/O, of the news that Plaintiff had to move twice under the orders of IA at Illinois River C.C. As to all claims presented herein against him, defendant C/O Fyffe is being sued in his individual capacity for damages. At all relevant times defendant C/O Fyffe has acted under color of state Law.

8.) Lieutenant Walters is and on information and belief at all relevant times herein mentioned was a Lieutenant at Illinois River C.C, and according to Defendant Johnson; moved Plaintiff from cell Z-D-78 to cell Z-C-76 at the direction of Internal Affairs. Lt. Walters is being sued in his individual capacity for damages. At all relevant times defendant Walters has acted under color of state Law.

9.) Justin Hammers, defendant; is and on information and belief at all relevant times herein mentioned was the warden at IRCC. As to all claims presented herein against him, defendant is being sued in his individual capacity for damages. At all relevant times defendant Hammers has acted under color of state law.

# IV
# Exhaustion of Available Remedies

10.) Plaintiff Exhausted his Administrative Remedies before filing this Complaint (See Declaration as Exhs "A", "E", "F", "G", "H", "I", "J", "K", "O", "P" and "Q").

# V
# Factual Statement

11.) On 10/17/19, Plaintiff had two library (law) call passes; one for 8:00 a.m and another for 2:00 p.m (See Declaration)

12.) On 10/17/19, Plaintiff filed a amended complaint against staff members at IRCC, which included Defendant Brad Johnson and Justin Hammers at the time (See Exh "B").

13.) Plaintiff _____ his _____ @ _____ library at Illinois River C.C. on 10/17/19 (See Exh "B").

14.) When Plaintiff returned from his first pass at 9:30 a.m, C/O Fyffe opened the door to the cell Plaintiff was in, which was 2-D-78 and stated, "Stone, your moving." when Plaintiff asked him where was he moving to, he stated, "2-C-75. This aint my call, IA made the call (See Declaration)."

15.) Plaintiff packed all his property, and when he got on 2-C, the individual that was moving out of 75 cell, they were replacing Plaintiff with.

16.) Plaintiff brought all his property to 2-C-75 and was allowed to clean the cell before he moved his property in (see Declaration and Exh "C").

17.) Afterwards, Plaintiff went to lunch. He came back and waited until it was time for him to go on his next call pass.

18.) When Plaintiff came back off his second pass to the law library at around 2:35 p.m., C/O Fyffe was holding the door opened to the entrance building and when Plaintiff got close to the entrance he stated, "Stone, your moving again." Plaintiff responded "Are you playing with me?" C/O Fyffe stated, "No, they said your moving again, I tried to get them to wait until second shift, but IA said they need you to do it now (See Declaration)."

19.) When Plaintiff walked back on the wing, he seen cells 75 and 76 doors opened. They was moving somebody out of 76 cell to move them in 75 cell where Plaintiff was at with another inmate (See Declarations and Exhs "C" and "D").

20.) The prisoner in 76 that they was moving out (Michael Steer See Exh "D") was in 76 with another prisoner also (See Exh "D"), a prisoner he was in the cell with for only two weeks (See Exh "D").

21.) Shift was changing as they left both doors opened, which is not normal and usually don't happen in no institution. The police on the 7 to 3 shift left, leaving Plaintiff and other inmates in the day room as the 3 to 11 shift was coming in.

22.) Plaintiff, fearing that stuff was trying to get a reaction out of him to place him on the disciplinary wing start repacking his property and moving again into cell 76.

23.) When Plaintiff moved all his property in cell 76, he noticed that the inmate they placed him in the cell with not only had a bad body order, but that he was also unstable. He was from a foreign country (See Declaration).

24.) Plaintiff was being retaliated against for exercising his First Amendment right. Once staff seen that Plaintiff knew and was ok with the first individual they moved him in the cell with in 75, which was Alex Ortiz they conspired to move him in the cell with somebody he could have potential trouble with.

3 of 9

25.) Both moves happened when he returned from the Law library after filing complaint against staff, including Defendant Brad Johnson and Justin Hammers.

26.) After a few days in the cell with his new cellmate, they had disagreements. Plaintiff put staff on notice that he was not getting along with his cellmate and requested to move, but the request was ignored (See Declaration).

27.) Plaintiff wrote grievances that he was being retaliated against by staff and placed in a situation for him to catch a disciplinary ticket or for him to get in a physical altercation with his cellmate, but it was also ignored even though the grievance was marked emergency and was taken as an emergency grievance, but nothing was done (see Exhs "E","F","G","H").

28.) Denise Spencer, the mother of Michael Stone called Springfield on 11/6/19 and talk to a woman by the name of April to make a complaint against the staff at IRCC. April took her name and forwarded it to Rob Jeffreys (Director) (See Exh "I").

29.) On 11/8/19, Mr. Jeffreys called Mrs. Spencer and she talk to him about the harassment and retaliation her son was going through, along with the fact that they keep moving him when he came from the law library and placed him in the cell with an individual they knew he wouldn't get along with to bait him into conflict or disciplinary segregation (See Exh "I")

30.) Mr. Jeffreys advised Mrs. Spencer that he would forward the complaint she sent him, which was from Plaintiff to Internal Affairs, but nothing happened because it was IA Brad Johnson who conspired to retaliate against plaintiff and violate his Civil Rights and cover it up through "manufactured consent"(See Exh "A").

31.) Plaintiff had another family member (Felicia Anderson) to call IRCC and she talk to Cheryle Hinthore, which was the Ass. Warden of Operation at the time; on November 13, 2019. (See Exh "J").

32.) Felicia Anderson let Mrs. Hinthore know that Mr. Stone was being retaliated and harassed by staff and that they keep moving him because of his law-related activity (see Exh "J").

33.) Mrs. Anderson let Miss. Hinthore know that Mr. Stone was placed in a cell with an individual that staff knew he wasn't going to get along with, was unstable and not clean, and that he was placed in that cell for the sole purpose of making him uncomfortable and to bait him into conflict. Miss Hinthore informed Mrs. Anderson that she already knew about the problem (see Exh "J"), but nothing was done.

34.) Plaintiff sent a complaint to Miss. Hinthore and Justin Hammers advising them about their staff, along with the harassment and retaliation he was receiving from staff. He also informed them in that complaint that he was not getting along with his cellmate and that the move was deliberate and malicious in intent to place him in harms way (See Exh "K") on 11/14/19, but nothing happened.

4 of 9

35.) On 11/23/19, because I couldn't continue to stand being in an unsanitary situation, Plaintiff was forced to go on a hunger strike and refused to eat until they reassigned him into a cell not influenced by malicious intent (see Declaration as Exh "A").

36.) As a result of plaintiff's hunger strike, he was moved to five house and placed in a hunger strike cell by himself. He was not allowed to go back to the cell 2-C-76 to pack his property. When his property made it to five house, all his food products were taken, and he was allowed to receive everything else (see Declaration).

37.) When Plaintiff checked his property, some of it was missing. Along with his missing property, when Plaintiff plugged his TV up the picture wouldn't show because it was either broke by his old cellmate or staff. Either way; plaintiff's TV was not broke before he went on hunger strike (see Declaration).

38.) Justin Hammers and Miss Itinthore came to talk to Plaintiff on 11/25/19, which Mr. Hammers acknowledged that he received the complaint Plaintiff sent him (see Exh "K") on 11/14/19, and told Plaintiff if he came off hunger strike he would move him again (see Declaration).

39.) Since 2015, Plaintiff has consistently reported misconduct and retaliation from staff, and such complaints went directly to Defendant Brad Johnson, which is Internal Affairs (IA), and Johnson has consistently ignored Plaintiff's complaints of retaliation and Harassment (see Exh "L" and Declaration).

40.) Every grievance that went to Defendant Brad Johnson about staff misconduct came up missing and every complaint that Defendant Johnson knew about directly from Plaintiff regarding misconduct of staff went uninvestigated by Defendant Johnson.

41.) As a result of Plaintiff's law-related activities, Plaintiff has also been denied work or job assignments by Defendant Johnson and Hammers.

## ❊ Plaintiff's First Cause Of Action ❊
## [Retaliation And Conspiracy]

42.) Plaintiff, for the purpose of his First Cause of Action against Defendants Brad Johnson, %o Fyffe, Lt. Walters and Justin Hammers, pursuant to Title 42 U.S.C. §1983 and Civil Conspiracy claim §1485(3) and pursuant to 775 ILCS 5/6-101, states:

  a) That at all times pertinent to this instant cause of action, Plaintiff had a right to be free from retaliation for "petitioning the government for redress of grievances" as guaranteed by the first and Fourteenth Amendments of the United States Constitution.

  b) That at all times pertinent to this instant cause of action, Defendants were mandated to:

  1.) "comply with departmental rules, written procedures, bulletins and written or verbal orders issued by proper authorities (see Exh "M" Section (C))."

2.) "Obey all Federal, State, and local laws (see Exh "N ")," and

3.) "Obey all applicable court decisions and orders related to the performance of [their] job duties (see Exh "N ")".

c) That Defendants violated Plaintiff's First and Fourteenth Amendment rights and established IDOC rules and regulations by willfully and maliciously moving him twice in one day; once at 9:30 a.m. and again at 2:35 p.m., both times coming from the law library and the same day he made a complaint about staff and moving him in a cell with an individual who plaintiff found out later hung around homosexuals, was unstable, unclean and who plaintiff did not get along with out of retaliation and as a means to both punish Plaintiff for his law-related activity, and to place him in danger while attempting to assassinate his character with other inmates (See Declaration).

d) That as a direct and proximate result of defendants retaliation, plaintiff was forced to go on a hunger strike from November 23rd to the 29th, which resulted in him moving again, having his TV broke and some of his property missing when his property got to five house and having to move again once he came off hunger strike.

## ⁂ Plaintiff's Second Cause OF Action ⁂
## [Interference With Access To The Courts]

43.) Plaintiff, for the purpose of his Second cause of action against Defendants Brad Johnson, % Pytt, Lt. Walters and Justin Hammers pursuant to title 42 U.S.C. § 1983, states:

a) That at all times pertinent to this instant cause of action, Plaintiff had a right to access to the Court as guaranteed by the First and Fourteenth Amendments of the United States Constitution;

b) That at all times pertinent to this instant cause of action, Defendants were mandated to:

1) "comply with departmental rules, written procedures, bulletins and written or verbal orders issued by proper authorities (See Exh "M").

2.) "Obey all Federal, State, and local laws (See Exh "N ")" and

3.) "Obey all applicable court decisions and orders related to the performance of [their] job duties (see Exh "N ")."

c.) That Defendants violated Plaintiff First and Fourteenth Amendment rights and established IDOC rules and regulations by willfully and maliciously moving him everytime he came back from the law library on the 10/17/14, the day he E-Filed a complaint against staff at the law library, out of retaliation and as a means to both punish Plaintiff for pursuing lawsuits and to prevent Plaintiff from further excercising his First Amendment Right.

d.) That as a direct and proximate result of defendant Brad Johnson's retaliation, Plaintiff was placed in a cell with an individual with the intent to not only taunt plaintiff into character defamation, but to also place him in a cell with an individual with the intent to bait plaintiff into conflict, harm and segregation to prohibit his law-related activities.

e) The Right of access to the Courts is one of the funda-
mental rights protected by the Constitution. Prison officials
may not retaliate against an inmate because of his exercise of
the right of access to the courts. This principle is applicable
even where the action taken in retaliation would be otherwise
permissible.

## ❈ Plaintiff's Third Cause Of Action ❈
## [Negligence]

44.) Plaintiff, for the purpose of his Third Cause of Action
against Defendants Brad Johnson, Hintbore and Hamers in their
individual capacities; reincorporates paragraphs 31-34, 34-41.
and avers the following:

a) That at all times pertinent to this instant cause of action,
Defendants Brad Johnson and Justin Hammers was mandated
to "comply with departmental rules, written procedures, bulletins,
and written or verbal orders issued by proper authorities (see
IDOC Adm. Code 120.40)" and also required to report staff
misconduct (see IDOC Adm. Code 120.40(a) & Exhs "M" and "N").

b) Defendants have documents that have demonstrated that
staff at IRCC has consistently singled-out Plaintiff on multiple
occasions during his stay at IRCC, creating an a-typical and
significant hardship upon Plaintiff, and refused to forward said
documents or investigate plaintiffs complaints and grievances.

c) Defendants Johnson and Hammers intentional refusal
to comply with IDOC Adm. Codes 120.40 and 120.40(a) was for the sole
purpose of protecting staff members from being fired for their criminal
conduct.

d) That as a direct and proximate result of Defendants
negligence, staff members at IRCC was permitted to Retaliate against
Plaintiff since his stay at IRCC.

45.) Plaintiff, for the purpose of his Third Cause of Action,
requests that this Honorable Court enter an Order finding Defendants
Actions as stated above to be negligent and against IDOC policy as to
be used as prima facia evidence should Plaintiff be retaliated again
as a result of Defendant Brad Johnson's negligence.

## ❈ Plaintiff's Fourth Cause Of Action ❈
## [Intentional Infliction Of Emotional Distress]

46. Plaintiff, for the purpose of his Fourth Cause of Action
against Defendants in their individual capacities; reincorporates
paragraphs 14-38 and avers the following:

a) That at all times pertinent to this instant cause of action,
Plaintiff had a right to be free from Intentional Infliction of
Emotional Distress for "petitioning the government for redress of
grievances, as guaranteed by the first and Fourteenth Amendments
of the United States Constitution;

b) That at all times pertinent and material to this cause of action, Defendants were mandated to:

1.) "comply with departmental rules, written procedures, bulletins and written or verbal orders issued by proper authorities;"

2.) "Not knowingly provide false information in statements;"

3.) "Not knowingly ~~provide~~ place Plaintiff into a position of danger;"

c) That defendants violated established IDOC Rules and Regulations when they willfully and maliciously participated in misconduct for the sole purpose of baiting Plaintiff into conflict and to prohibit him from his law-related activities.

d) That as a direct and proximate result of defendants misconduct, Plaintiff was placed in a unstable and unsanitary situation, forced to go on a hunger strike, had his TV broken and some of his property taken because he was not allowed to go back and pack his property.

## Plaintiff's Fifth Cause Of Action

[Action For Declaratory Judgement]

47.) Plaintiff, for the purpose of his ~~fifth~~ Cause of Action against Defendants in their individual capacity states:

48.) Plaintiff has a clear right to be free from cruel and unusual punishment as guaranteed by the United States Constitution's Eighth Amendment.

49.) Plaintiff, for the purpose of his ~~fifth~~ Cause of Action requests that this Honorable Court:

a) Declare that through action alone, a prison employee's intentional use to abuse their power by continuing to move Plaintiff and placing him in a cell with an inmate they knew he would not get along with to place him in harms way, constitutes a diliberate deprivation of a prisoner's Eighth Amend. right to be free of cruel and unusual punishment;

b) declaring that defendants "calculated Harassment" and "Retaliation" to continue to move plaintiff in different cells "maliciously motivated", was unrelated to institutional security and hence "totally without penological justification", violated Plaintiff's Eighth Amendment right to be free of cruel and unusual punishment;

c) Grant Plaintiff the relief to be housed in a single man cell by himself, while he is a person incarcerated at IRCC, and

d) Appropriate relief as this Honorable Court deems just to ensure that Defendants will refrain from using "manufactured consent" to make prisoners to act violently against one another, or manipulating the environment to do so, as an example to other IRCC employees to refrain from such practice that have the propensity to make prisoners to attack one another;

<u>Relief Requested</u>

A) Declare that defendants conspired to violate Plaintiff's Civil Rights when they moved him everytime he came back from the law library because of his law-related activities, and placing him in a cell with an individual that was unsanitary and unstable, with the intent to bait plaintiff into conflict and character defamation.

B) Declare that Defendants violated Plaintiff's First Amendment Right when they retaliated against him with the sole purpose to interfer with his access to the Courts.

C) Declare that Defendants Brad Johnson and Justin Hammers Failed in their individual and official capacity, once they were made aware of prior staff misconduct towards Plaintiff because of his law-related activity, and as a result of their negligence and retaliation towards Plaintiff he endured intentional infliction of emotional distress when he was moved everytime he came back from the law library on 10/17/14, placed in a cell with an individual that was not clean and unstable, forced to go on a hunger strike from 23-25, had some of his property taken and had his TV broke once his property made it to five house. Also defendant Hinthore

d) Declare that Defendant Brad Johnson violated plaintiff's First Amendment Right by denying him a job or work assignment because of his law related activity.

E) Award compensatory damages in the following amounts:
    10,000 jointly and severally against Defendants Brad Johnson, Justin Hammers, % Fyffe and Lt. Walters.

F) Award Punitive damages in the following amounts:
    5,000 each against defendants Brad Johnson, Justin Hammers, % Fyffe and Lt. Walters.

G) Issue an Injunction ordering defendants or any other Illinois River Correctional Officer to stop violating Plaintiff's Civil Rights and to house Plaintiff in a single man cell by himself, while he is a person incarcerated at IRCC.

H.) Hold staff members accountable for their actions.

/s/ Michael Stone

Michael Stone
R-18027
P.O. Box 999
Illinois River C.C.
Canton IL, 61520

11/12/20

9 of 9